ANNA E. UNDERWOOD *vs.* CITY OF WORCESTER.

Worcester. October 1, 1900. — November 28, 1900.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, & HAMMOND, JJ.

*Location by a Street Railway Company in a Public Highway — Petition for Damages — Action against City.*

If, on the granting to a street railway company of a location in a public highway, it appears that all the work was done by the company and in accordance with the decree granting the location, that in granting the location and in imposing reasonable restrictions and seeing that they were complied with the board of aldermen acted not as the agents of the city but as public officers, that in so far as the superintendent of streets had anything to do with the work he acted under the decree and not as the agent of the city or as the surveyor of highways, and that there was no change made which was not required expressly or impliedly by the decree, the work was done for the purpose of constructing, maintaining, and using the railway and not for the repair of the highway, and it was not done by the surveyor or other person intrusted with making specific repairs within the meaning of Pub. Sts. c. 52, § 15; and the abutting landowner cannot recover damages against the city, in the absence of a statute remedy, by a change of grade in an existing highway.

PETITION, under Pub. Sts. c. 52, §§ 15, 16. At the trial in the Superior Court, before *Gaskill,* J., the respondent requested the following rulings: 1. Upon all the evidence the petitioner is not entitled to recover. 2. There is no evidence to warrant a finding by the jury that the work done on Grafton Street in front of the petitioner's premises at the time in question was done by the direction or authority of any authorized agent of the city of Worcester for the purpose of making general repairs

upon said street. 3. The granting of the location to the Worcester Consolidated Street Railway Company offered in evidence imposed no liability on the defendant. 4. There is no evidence that any of the acts complained of were done by the defendant or any of its authorized agents for the purpose of making specific repairs upon Grafton Street.

The judge refused so to rule; the jury returned a verdict for the petitioner; and the respondent alleged exceptions, which appear in the opinion.

*A. P. Rugg,* for the respondent.

*W. Thayer,* (*H. W. Cobb & F. B. Hall* with him,) for the petitioner.

HAMMOND, J. This is a petition brought under Pub. Sts. c. 52, §§ 15, 16, for the assessment of damages caused to the petitioner's land abutting on Grafton Street in the respondent city by reason of changes in the grade of the street. Before the change of grade the street was a public way forty-nine and one half feet wide, and the part wrought for travel was from twenty to twenty-five feet wide. The petitioner's land was upon the easterly side of the street, and its surface at the line of the street was several feet above the level of the wrought part. The surface of the ground within the location descended from the easterly line of the street about eleven feet before coming to the wrought part, at a slope of about one foot fall to one foot of linear distance.

In December, 1897, the board of aldermen of the respondent city, acting under Pub. Sts. c. 113, § 7, granted to the Worcester Consolidated Street Railway Company a location in said street. By the terms of the grant the railway company was authorized to construct its tracks upon the side of that part of the street which adjoined the petitioner's land, and as a part of the " restrictions " imposed upon the company it was ordered that " the manner of laying the tracks, the location, grade, and alignment of the same, the position of all the turnouts, spur tracks, pattern of frog and switch connections shall be to the satisfaction of the said [Worcester] street department." Several other restrictions were imposed as to the manner in which the work should be done, and it was to be done in a manner acceptable to the street department. Upon the application of the engineer of the rail-

way company the city engineer exhibited to him a plan prepared by the city engineer showing the location, grade, and alignment of the tracks to be laid under the order granting the location. The railway engineer at the suggestion of the city engineer had an interview with the superintendent of streets, who was the street commissioner of the city, and who had authority to make general repairs, and the superintendent said the plans were all right. The work was subsequently done by the railway company in accordance with the plan. In doing the work the company excavated the land upon the easterly side of the location of the road adjoining the petitioner's land, substantially to the easterly line of the location and to the grade of the wrought part of the way as it had theretofore existed. The easterly rail was laid so as to be about four feet from the easterly line of the street, that being as near as it could be to the line of the street and leave room for the trolley poles and the cars. The bank was dug out along the line of the petitioner's land to a depth varying from one to five feet, and a cobblestone paving was laid between the westerly rail of the railway track as laid and what had before been the wrought part of the way. The rail laid was a T rail. When the work was finished, the entire street on the easterly side was at a grade with the wrought part of the way as it existed at the time the location was granted. While the work was in progress the superintendent of streets was seen about there two or three times, but it did not appear that he gave any order or, except as above stated, that he said anything about the work.

All the work was done by the street railway company and in accordance with the decree granting the location.

At the trial the respondent asked for a ruling that the petitioner was not entitled to recover. The court refused to give the ruling, and the case was submitted to the jury, who found for the petitioner.

We think that the ruling should have been given. In granting the location, the board of aldermen acted not as the agents of the city but as public officers. They had the right to impose reasonable restrictions, and to see that the restrictions were complied with. The superintendent of streets, in so far as he appears to have had anything to do with the work, must be presumed to

have acted under the decree, and not as the agent of the city or as the surveyor of highways. It does not appear that there was any change made which was not required expressly or impliedly by the decree.

The work was done for the purpose of constructing, maintaining, and using the railway, and not for the repair of the highway, nor was it done by the surveyor or other person intrusted with making specific repairs within the meaning of Pub. Sts. c. 52, § 15. St. 1898, c. 578, was not in force at the time this work was done, and therefore we do not consider it.

There is no other statute upon which the petitioner relies, and in the absence of a statute remedy the abutting landowner cannot recover damages by a change of grade in an existing highway. *Callender* v. *Marsh,* 1 Pick. 418. *Vigeant* v. *Marlborough,* 175 Mass. 459.                    *Exceptions sustained.*